# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TYRONE VALENTINE, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-02475-ERW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORADUM AND ORDER

This matter is before the Court on Ground Five of Movant Tyrone Valentine's ("Movant") *Pro Se* Motion to Vacate, Set Aside or Correct Sentence [1], Amended Motion to Vacate Conviction and Correct Sentence under 28 U.S.C. § 2255 [13] and Second Amended Motion to Vacate Conviction and Correct Sentence under 28 U.S.C. § 2255 [22] (collectively "§ 2255 Motions").

## I.  BACKGROUND[1]

On September 7, 2018, the Court denied Grounds One, Two, Three, and Four of Movant's § 2255 Motions, with only Ground Five remaining. ECF No. 33. Ground Five asserts Movant's plea counsel was ineffective for failing to timely inform him of the Government's plea offer and to describe the admissions the plea agreement included, causing the waiver of his Fifth and Sixth Amendment rights to be uninformed and involuntary. The Court held an evidentiary hearing on Movant's claim of ineffective assistance of counsel on February 19, 2019, at which both Movant and his trial attorney, Nicholas Williams ("Williams"), testified. ECF No. 49.

---

[1] The Court detailed the background of this case in its Memorandum and Order of September 7, 2018. ECF No. 33. The Court incorporates the background by reference as if fully set forth herein.

During the evidentiary hearing, Movant testified he spoke with Williams by phone on January 3 or 4, 2015 about going to the funeral home. ECF No. 49 at 6:15-7:17. Movant was transported to the federal courthouse on January 7, 2015 and met with Williams. *Id*. at 7:18-8:1. Movant testified Williams told Movant he could see his son after he signed a plea agreement. *Id*. at 8:5-7. Movant further stated he told Williams he did not want to sign a plea agreement because he was not in the right frame of mind. *Id*. at 9:6-15. Movant asked Williams about going to the funeral home to view his son's body. *Id.* at 9:20-25. According to Movant, Williams said Movant needed to get the plea agreement over with so Movant could see his son. *Id*. at 10:16-18. Williams also discussed Movant's potential sentence, indicating Movant may not qualify as a career offender, which carried a sentence of 15 years to life. *Id.* at 10:19-11:6. Movant testified he did not thoroughly review the plea agreement and signed it only to go to the funeral home to see his son. *Id.* at 15:10-20; 18:21-24. At the plea hearing on January 7, Movant expressed problems with some of the allegations in the plea agreement. *Id.* at 15:21-20:22. Movant further testified he informed Williams he wanted to go to trial but not at that time so he could get his head together and grieve his son. *Id.* at 11:14-12:16; 28:8-14.

Williams also testified at the evidentiary hearing. He stated before signing the proposed plea agreement, he walked Movant through the contents paragraph by paragraph, including the statement of facts and the sentencing guidelines. ECF No. 49 38:7-41:23. Williams testified he visited Movant at the Ste. Genevieve County Jail on October 14, 2014 and January 5, 2015, although the visitor logs only recorded the October date. *Id.* at 43:14-45:13. Williams further stated the Assistant United States Attorney sent an email the morning of January 5 with a revised plea agreement eliminating a recommended prison term and giving deference to the court to make the agreement seem more "open." *Id*. at 46:4-47:24. According to Williams, on January 5,

he talked to Movant "for a while that night, given some of the circumstances of his life and his family." *Id.* at 48:8-17. He then read through the proposed agreement paragraph by paragraph and highlighted the removal of the 97-month sentence reference and the change to Movant's requested "open" plea agreement. *Id.* at 48:17-49:4. Williams and Movant also discussed the fatal shooting of Movant's son, after which Movant indicated he was ready to further discuss the proposed plea agreement. *Id.* at 49:5-20; 61:4-62:2.

After the close of the evidentiary proceedings, the parties submitted post-hearing briefs. ECF Nos. 54, 55, 60. Thus, Ground Five of Movant's § 2255 Motion is now ripe for disposition.

## II. STANDARD

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). In order to obtain relief under § 2255, the movant must establish a constitutional or federal statutory violation constituting "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)).

Claims of ineffective assistance of counsel claims require a movant to show "both that his attorney's performance 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). To show counsel's performance was deficient, a movant must show "'counsel made errors so serious that counsel

was not functioning as the counsel guaranteed the defendant by the Sixth Amendment [to the United States Constitution].'" *Anderson v. United States*, 393 F.3d 749, 753 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). To satisfy the prejudice prong of *Strickland* in the context of a guilty plea, a movant "must establish a reasonable probability that he would have exercised his right to a trial but for counsel's ineffectiveness." *Watson v. United States*, 682 F.3d 740, 745 (8th Cir. 2012) (citation omitted). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome' or "a substantial, not just conceivable, likelihood of a different result.'" *Meza-Lopez*, 929 F.3d at 1044-45 (quoting *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (internal quotations and citation omitted)).

Because of the difficulties inherent in evaluating an attorney' performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). Instead, judges should look to contemporaneous evidence to corroborate the preferences conveyed by a defendant. *Id.*

### III. ANALYSIS

Movant's only remaining ground for § 2255 relief alleges counsel pushed Movant to enter into a guilty plea agreement immediately after the tragic murder of Movant's son, rendering his guilty plea unknowing and involuntary. Specifically, Movant claims the "record reflects both Mr. Valentine's pain as a grieving parent and counsel's focus on securing a guilty plea as reflected in his lack of investigation of defense witnesses, and his dismissal of the potential value in the witnesses Mr. Valentine named in the impromptu consultation this Court

4

ordered mid-plea." ECF No. 54 p. 2. Further, Movant contends counsel pressed for a last-minute plea agreement against Movant's "longstanding goal to refute the accusations of his guilt in the Deandre Smiths' shooting." *Id.*

Respondent United States of America ("Government") responds Movant has failed to establish Williams' representation was ineffective or that the representation prejudiced Movant. The Government maintains Williams carefully walked Movant through the contents of the plea agreement and discussed the agreement with Movant several times during his representation. In addition, the Government notes nothing in the record supports Movant's self-serving statements that Movant was coerced into entering the plea agreement.

Review of the plea hearing transcript establishes Movant testified he fully discussed the charge and the case in general with Williams. 4:14-CR-00108 ERW, ECF No. 107 at 7:11-16. However, Movant complained that Williams failed to file two pre-trial motions. Williams explained Movant withdrew the handwritten *pro se* motions, and Williams did not believe proceeding with these motions was in Movant's best interest. *Id.* at 9:4-10:20.

Further, Movant claimed to have one witness on his behalf, at which time the Court took a recess to allow Movant and Williams to have a discussion. *Id.* at 13:22-14:24. After speaking with Movant, Williams stated the witnesses were individuals who knew something but would not be able to provide testimony other than hearsay. *Id.* at 15:10-16:3. Movant confirmed Williams' understanding was correct. *Id.* at 16:6-7. In addition, during the hearing Movant expressed some disagreement with the Government's facts in that Movant claimed he did not make any statements to investigators. *Id.* at 20:10-21:13. The Court indicated the record showed Movant disagreed with those limited facts. *Id.* at 12:9-13.

With respect to the Guilty Plea Agreement, the following exchange took place between the Court and Movant:

> Q  (By The Court) I have been supplied with a document19 that's called "Guilty Plea Agreement." I'm going to ask that Page 13 and the entire agreement be provided to you to see if your signature appears there.
>
> MR. STEVENS: That's actually Page 12, Judge, the signature page.
>
> THE COURT: Page 12, all right. Thank you.
>
> A  Yes, it is, Your Honor.
>
> Q  (By The Court) Have you had an opportunity to read this document in its entirety before you signed it?
>
> A  Yes, I have, Your Honor.
>
> Q  Have you had an opportunity to discuss it fully with your attorney before you signed it?
>
> A  Yes, I did, Your Honor.
>
> Q  Other than this agreement, are there any other agreements or understandings or deals that exist or that you believe may exist which in any way affect your case?
>
> A  No, Your Honor.
>
> Q  Other than this agreement, has anyone at any time made any other or different promise, representation or assurance to you, or has anyone made any threat against you to cause you to enter a plea of guilty in this case?
>
> A  No threats, Your Honor.
>
> Q  All right. Do you believe you understand the terms of the agreement?
>
> A  I understand them.

4:14-CR-00108 ERW, ECF No. 107 at 21:18-22:18. This exchange indicates Movant's understanding of the plea agreement and his opportunity to fully discuss the agreement with Williams prior to signing.

In addition, Movant acknowledged neither party would request a sentence above or below the applicable sentencing guideline range, and he could be sentenced as an Armed Career Criminal which would result in a higher offense level and criminal history category. *Id.* at 23:4-9; 24:17-25:20. During the guilty plea hearing the Government also reiterated Movant could be found an Armed Career Criminal and that Movant was pleading guilty with full knowledge of that possibility and the fact that the guilty plea would not be withdrawn if the Court determined Movant was an Armed Career Criminal. *Id.* at 29:2-15. Movant answered he understood the range of punishment. *Id.* at 30:3-5. Movant further represented he was pleading guilty to the one Count, understood the Court's questions, and answered all of them truthfully and honestly. *Id.* at 33:3-11.

In addition, during the hearing Movant inquired about an open plea. Williams stated Movant was aware he could be found an Armed Career Criminal and understood the open plea was not pleading guilty of being an Armed Career Criminal but leaving it to the Probation Office to make a recommendation and the Court to make the final determination. *Id.* at 33:12-34:14. When asked by the Court whether Movant understood he was not admitting he was an Armed Career Criminal, and the Court would make the ultimate decision whether Movant was an Armed Career Criminal, Movant responded, "I understand better now, Your Honor." *Id.* at 34:23-35:6. Movant acknowledged he was "entering a plea of 'guilty' to the Indictment, but [was] not saying or admitting on the record that [he was] an Armed Career Criminal." *Id.* at 35:7-10.

Based on Movant's statements, the Court found:

> Mr. Valentine is fully competent and capable of entering an informed plea; that he is aware of the nature of the charge and of the consequences of his plea under Count I; that the plea of "guilty" is a knowing and voluntary plea made

willing and intelligently, supported by an independent factual basis containing each of the essential elements of the offense.

The plea is accepted, and he is found to be guilty of the offense charged.

*Id.* at 35:18-36:1.

Upon review of all the evidence, the Court finds Movant is unable to overcome the heavy burden to establish ineffective assistance of counsel. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). In the guilty plea context, to demonstrate prejudice, Movant must show a reasonable probability exists that, but for counsel's errors, Movant "would not have pleaded guilty and would have insisted on going to trial." *Meza-Lopez*, 929 F.3d at 1044 (internal quotation marks and citations omitted).

Here, the record shows counsel's representation of Movant did not fall below an objective standard of reasonableness. The colloquy between Movant and the Court at the guilty plea hearing establishes Movant discussed his case with his attorney, read the guilty plea agreement in its entirety, understood the terms of the agreement, understood the charges against him, agreed with all facts set forth by the Government except making a statement to investigators, and understood the possible sentence. Under Eighth Circuit law, facts from a prosecutor's summary of the plea agreement, language of the plea agreement, dialog between the court and a defendant, and stipulated facts before the district court are sufficient to find a factual basis for a plea of guilty. *United States v. Brown*, 331 F.3d 591, 595 (8th Cir. 2003) (citations omitted).

While Movant now claims he did not read the agreement, was not in the proper mental condition to sign the plea agreement, and was instead coerced by counsel, the testimony of counsel and the plea hearing transcript tell a different story. Movant was unequivocal during the plea hearing that he read and fully discussed the plea agreement with his attorney and understood

the possible sentence, including the potential to be sentenced as an Armed Career Criminal. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Further, Eighth Circuit precedent holds "inaccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." *United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009); *see also Gomez*, 326 F.3d at 975 (finding movant's assertion that counsel's advice regarding career offender issue would have affected movant' decision to plead guilty was not credible where sentencing stipulations in the plea agreement clearly stated they were non-binding on the court).

Here, Movant acknowledged he was not admitting he was an Armed Career Criminal and the ultimate decision would be made by the Court after hearing from the probation office, the Government, and Movant and his attorney. 4:14-CR-00108 ERW, ECF No. 107 at 34:23-35:10. Likewise, the record shows Movant had been aware of the contents of the plea agreement, the charges, and the potential sentencing exposure prior to his son's death, and Movant had asked that the agreement be revised to be more open. ECF No. 49 at 33:16-36:22; 38:7-41:23; 46:15-47:24. In short, the record refutes Movant's allegations that his guilty plea was unknowing and involuntary. Thus, the Court finds Movant is unable to establish his attorney's performance fell below an objective standard of reasonableness under *Strickland*. *Meza-Lopez*, 929 F.3d at 1045-46. Because Movant is unable to establish counsel's performance was deficient, the Court need not address the prejudice prong of the *Strickland* test. *Brown v. United States*, 311 F.3d 875,

878 (8th Cir. 2002). Therefore, the Court will deny Movant's fifth ground for federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253, an appeal may not be taken to a court of appeals from a final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Because Movant has not made such a showing, the Court will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that that Ground Five of Movant Tyrone Valentine's Motions to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (ECF Nos. 1, 13, 22) is **DENIED.**

**IT IS FURTHER ORDERED** that the Movant has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate judgment in accordance with this Memorandum and Order is entered on this same date.

Dated this 6th day of March, 2020.

*E. Richard Webber*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE